Amanda Wright Rogerson (ISB No. 9885)
Bryan Hurlbutt (ISB No. 8501)
Laurence J. Lucas (ISB No. 4733)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
arogerson@advocateswest.org
bhurlbutt@advocateswest.org
llucas@advocateswest.org

Michael Lopez (ISB No. 8356)
NEZ PERCE TRIBE
P.O. Box 305
Lapwai, ID 83540
(208) 843-7355
(208) 843-7377 (fax)
mlopez@nezperce.org

*Attorneys for Plaintiff Nez Perce Tribe*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEZ PERCE TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>MIDAS GOLD CORP.,<br>MIDAS GOLD IDAHO, INC.,<br>IDAHO GOLD RESOURCES COMPANY, LLC,<br>And STIBNITE GOLD COMPANY,<br><br>    Defendants. | No. 01:19-cv-307<br><br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1.      Plaintiff Nez Perce Tribe ("Nez Perce" or "the Tribe") brings this action under 33 U.S.C. § 1365(a), the citizen enforcement provision of the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), against Defendant Midas Gold Corp., a Canadian corporation, and related Defendants Idaho Gold Resources Company, LLC, Stibnite Gold Company, and Midas Gold Idaho, Inc. (hereinafter collectively referred to as "Midas Gold" or "Defendants").

2.      The CWA prohibits the discharge of any pollutant from a point source to waters of the United States unless done in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1311(a). In violation of the CWA, Midas Gold has discharged and continues to discharge pollutants from multiple point sources at the Stibnite Gold Project ("Proposed Mine") site ("Midas Gold's Site" or "the Site") into the East Fork South Fork ("EFSF") Salmon River and its tributaries without authorization by a valid NPDES permit(s).

3.      Midas Gold is illegally discharging aluminum, arsenic, antimony, cyanide, iron, manganese, mercury, and thallium. Each of these pollutants can negatively impact the health of fish, other aquatic biota, birds, mammals, and humans, and each pollutant has been documented entering the EFSF Salmon River and its tributaries at concentrations above applicable water quality criteria. The EFSF Salmon River and its tributaries are waters of the United States located within the Tribe's aboriginal homeland, and Midas Gold's discharges harm the Tribe's culturally-significant, Treaty-reserved resources, including its fisheries.

4.      Midas Gold's unpermitted discharges have occurred for at least five years prior to the date of this Complaint and are ongoing.

COMPLAINT - 2

5.      In 2009, Midas Gold's precursor corporations began acquiring land and mineral interests at the Site, and Midas Gold has since gained ownership and/or operational control over the lands and mining claim(s) where each pollution point source is located. Midas Gold has conducted exploratory drilling and proposed constructing an enormous gold mine at the Site, but they have not secured the numerous permits and approvals required for the Proposed Mine.

6.      Over the last ten years, as Defendants gained ownership and/or operational control over the Site, they have extensively studied the Site's history, hydrology, and water quality. Defendants have not taken action, however, to address the sources of pollution at the Site and never obtained a valid NPDES permit(s) authorizing pollution discharges. Midas Gold continues to discharge pollutants from these point sources without a valid NPDES permit(s).

7.      The Tribe seeks declaratory and injunctive relief prohibiting Defendants from discharging pollutants into the EFSF Salmon River and its tributaries without obtaining and complying with a valid NPDES permit(s). The Tribe also seeks CWA civil penalties, under CWA § 309(d), 33 U.S.C. § 1319(d), against Defendants, jointly and severally, for each and every violation committed, to be paid to the U.S. Treasury. Finally, the Tribe seeks as an award of litigation costs including attorney and expert witness fees, under CWA § 505(d), 33 U.S.C. § 1365(d), and any other applicable cost and fee recovery statutes.

### JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court under the CWA, 33 U.S.C. § 1365(a), which vests U.S. district courts with jurisdiction over citizen enforcement actions like the one at issue in this case.

COMPLAINT - 3

9.      The requested relief is proper under the CWA, 33 U.S.C. § 1365(a), and under 28 U.S.C. § 2201-2202 because Midas Gold has discharged and continues to discharge pollutants without a valid NPDES permit(s).

10.     The Tribe is a citizen under the CWA. 33 U.S.C. § 1365(g).

11.     As required by the CWA, the Tribe provided Midas Gold with notice of its intent to sue sixty days prior to filing this Complaint. 33 U.S.C. § 1365(b)(1). At the same time, the Tribe also provided notice of the impending action to EPA and Idaho Department of Environmental Quality officials, as required by the CWA. *Id.* Neither agency has commenced an action that constitutes diligent prosecution to redress Midas Gold's CWA violations. Therefore, this action is permitted to commence under the CWA. *See* Notice of Intent, June 5, 2019 and Exhibits thereto, which are attached hereto as Attachments 1 through 4, and incorporated by reference.

12.     Venue is proper in this Court under the CWA, 33 U.S.C. § 1365(c)(1), because Midas Gold's unlawful point source pollution discharges are located within the District of Idaho.

## PARTIES

### Nez Perce Tribe

13.     The Tribe is a federally-recognized Indian tribe with headquarters on the Nez Perce Reservation in Lapwai, Idaho. The Nez Perce people, the *Nimiipuu*, exclusively occupied, since time immemorial, thirteen million acres encompassing a large part of what is today Idaho, Oregon, and Washington—stretching from the Bitterroot Mountains to the Blue Mountains. Nez Perce also traveled far beyond this homeland to fish, hunt, gather, and pasture—frequently going east to buffalo country, in what is today the state of Montana, and west along the Snake and Columbia rivers to the Pacific Ocean.

COMPLAINT - 4

14.     Nez Perce actively maintain their connection to the land, water, and resources of their vast homeland. Seasonal rounds and migration patterns for cultural and subsistence uses are carefully coordinated to take full advantage of fish, wildlife, and root crops. These annual cycles correspond not only to the unique resource needs of the Nez Perce and the seasonal availability of their resources but also to the ceremonial activities and social gatherings that occur throughout the year. The Nez Perce's intimate knowledge and continuous use of their homeland over millennia has created a unique and reverential bond between people and place that defines Nez Perce culture and identity.

15.     When the Tribe entered into a treaty with the United States in 1855, it sought to reserve the rights central to maintaining its culture and way of life. The 1855 Treaty reserved to the Tribe, for its "exclusive use and benefit," 7.5 million acres of its more than thirteen-million-acre homeland, including an area spanning present-day north-central Idaho, southeast Washington, and northeast Oregon as well as:

> [T]he right of taking fish at all usual and accustomed places in common with citizens of the Territory; and of erecting temporary buildings for curing, together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land.

Treaty with the Nez Perces, art. 3, June 11, 1855, 12 Stat. 957.

16.     Midas Gold's Site and point source pollution discharges are geographically located within the Tribe's aboriginal homeland, within the area adjudicated by the Indian Claims Commission to have been exclusively used and occupied by the Tribe, *Nez Perce Tribe v. United States*, Docket #175, 18 Ind. Cl. Comm. 1, and within the area over which Tribe has Treaty-reserved rights and resources.

COMPLAINT - 5

17.    Nez Perce Tribal members, pursuant to the Tribe's Treaty-reserved rights, continue to fish, hunt, gather, and pasture across the Tribe's vast aboriginal homeland and at traditional places, including areas within and surrounding Midas Gold's Site and in waters directly downstream. *See* Map 1, below (illustrating Stibnite Mine location in reference to Nez Perce Tribe lands).



COMPLAINT - 6

18.     The majority of Midas Gold's Site is located on unpatented mining claim(s) on public land in the Payette National Forest. The Payette National Forest provides irreplaceable habitat for the Tribe's Treaty-reserved fish, wildlife, plants, and resources, including: spring/summer Chinook salmon, steelhead, bull trout, west slope cutthroat trout, redband rainbow trout, mountain whitefish, western pearlshell mussel, Rocky Mountain bighorn sheep, North American wolverine, fisher, gray wolf, elk, mule deer, moose, white-tailed deer, Clark's nutcracker, whitebark pine, limber pine, bent-flower milkvetch, Sacajawea's bitterroot, Idaho Douglasia, huckleberries, serviceberry, elk thistle, yarrow, wild onion, wild tobacco, Indian hemp, tule, elderberry, chokecherry, Indian tea, Oregon grape, thimbleberry, alder, birch, and kowskows.

19.     Regrettably, some of the resources sacred to the Tribe are at risk of disappearing in the Payette National Forest. The Tribe is especially concerned about the decline of Snake River spring/summer Chinook salmon, Snake River steelhead, and bull trout, each of which is listed as "threatened" under the Endangered Species Act ("ESA") due to population declines, habitat loss, and the risk of extinction. The Tribe has worked to recover these species in the South Fork Salmon River watershed, including in the EFSF Salmon River.

20.     For example, the Tribe's Department of Fisheries Resources Management works extensively throughout the South Fork Salmon River watershed, expending approximately $2.79 million annually on fisheries supplementation, research, and watershed restoration work, as part of the broader Columbia River Basin salmon restoration efforts. This work includes moving some Chinook salmon above the "Glory Hole" (also known as the "Yellow Pine Pit")—a legacy mine pit at Midas Gold's Site that blocks salmon from migrating up the EFSF Salmon River to their spawning grounds. Tribal biologists and watershed specialists, in partnership with the

COMPLAINT - 7

Forest Service and private entities, also supplement the Chinook salmon population in Johnson

Creek, operate two salmon hatchery programs, monitor adult returns and juvenile production to

determine the status and productivity of ESA-listed Chinook salmon, and implement habitat

restoration projects in the South Fork Salmon River watershed.

21.     Due to the Tribe's Treaty-reserved rights and resources within and around Midas

Gold's Site, and its substantial fishery-restoration work in the South Fork Salmon River

watershed, the Tribe has also invested a substantial amount of time and resources in

understanding and trying to address its concerns with Midas Gold's activities at the Site.

22.     Since 2012, the Tribe has been deeply engaged in learning about Midas Gold's

activities and proposals, including Midas Gold's mine exploration proposals, and in learning

about the Site and its resources. The Tribe's Executive Committee members have consulted with

federal agencies and have, along with Tribal staff, visited the Site, reviewed documents,

participated in administrative proceedings, and submitted comments concerning Midas Gold's

activities and proposals.

23.     The Tribe has also dedicated substantial financial and staff resources to

understanding Midas Gold's Proposed Mine and the harm it would do to the Tribe's Treaty-

reserved resources in, around, and downstream of the Site and the harm it would thereby have on

the Tribe and its members.

24.     Midas Gold's point source pollution discharges from the Site have degraded and

continue to degrade water quality in and downstream of the Site. These discharges harm aquatic

life and the plants and wildlife that rely on these waters and food sources. These discharges also

harm Nez Perce Tribal members who actively fish and gather these Treaty-reserved resources

throughout their aboriginal homeland, including in the South Fork Salmon River watershed.

COMPLAINT - 8

These resources and their procurement are central to Tribal members' cultural identity and cultural practices.

25.     The Tribe's injuries are fairly traceable to Midas Gold's unpermitted pollution discharges, and a favorable decision imposing declaratory relief, injunctive relief, and/or civil penalties will redress the Tribe's injuries.

**Midas Gold**

26.     Midas Gold consists of four separate but related corporations: Midas Gold Corp.; Midas Gold Idaho, Inc.; Idaho Gold Resources Company, LLC; and Stibnite Gold Company. These four corporate entities individually and/or collectively own or hold the patented and unpatented mining claim(s) on which each of the unlawful CWA discharges are occurring, have operational control of the Site, and are the Defendants in this matter.

27.     Defendants Midas Gold Idaho, Inc., Idaho Gold Resources Company, LLC, and Stibnite Gold Company are Idaho companies and wholly-owned subsidiaries of Midas Gold Corp.

28.     Defendant Midas Gold Corp. was incorporated on February 22, 2011 under the Business Corporations Act of British Columbia, Canada, S.B.C. 2002, c. 57. It was organized to locate, acquire, and develop mineral properties located principally in the Stibnite Mining District in Valley County, Idaho. Its principal business activity continues to be the exploration and development of its Proposed Mine in Valley County, Idaho. Its corporate office is located at 890-999 West Hastings St, Vancouver, BC, V6C 2W2, Canada.

**APPLICABLE LEGAL REQUIREMENTS**

29.     Congress adopted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes an

COMPLAINT - 9

"interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife." § 1251(a)(2). To these ends, Congress developed both a water quality-based and technology-based approach to regulating discharges of pollutants from point sources into waters of the United States.

30.     The CWA prohibits the "discharge of any pollutant by any person" to waters of the United States, unless authorized by a valid NPDES permit(s). *Id.* §§ 1311(a), 1342(a).

31.     "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12). "Pollutant" is defined to include solid, chemical, and industrial waste discharged into water. *Id.* § 1362(6). A "point source" is "any discernible, confined and discrete conveyance," *id.* § 1362(14), and "navigable waters" are broadly defined as "the waters of the United States." *Id.* § 1362(7).

32.     The CWA's citizen suit provision authorizes "any citizen" to "commence a civil action on his own behalf" in federal district court against any person who is alleged to be in violation of "an effluent standard or limitation" of the Act. *Id.* § 1365(a). "'[C]itizen' means a person or persons having an interest which is or may be adversely affected." *Id.* § 1365(g). "Person" is "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* § 1362(5). "Municipality" includes an "Indian tribe or an authorized Indian tribal organization." *Id.* § 1362(4).

33.     A person is liable under the CWA for discharging pollutants without a NPDES permit if that person is an "owner or operator of any 'facility or activity' subject to regulation under the NPDES program." 40 C.F.R. § 122.2. "Facility or activity means any NPDES 'point source' or any other facility or activity (including land or appurtenances thereto) that is subject to

COMPLAINT - 10

regulation under the NPDES program." *Id*. A person or entity is "an operator of a facility where it has the power or capacity to (i) make timely discovery of discharges, (ii) direct the activities of persons who control the mechanisms causing the pollution, and (iii) prevent and abate damage." *Beartooth All. v. Crown Butte Mines*, 904 F. Supp. 1168, 1175 (D. Mont. 1995) (*citing Apex Oil Co. v. United States*, 530 F.2d 1291, 1293 (8th Cir. 1976)).

34.    Citizens are required to provide notice of any alleged violations sixty days prior to commencing suit. 33 U.S.C. § 1365(b).

35.    The CWA provides for the imposition of civil penalties of up to $37,500 per violation per day that occurred through November 2, 2015, and up to $54,833 per violation per day that occurred after November 2, 2015. 33 U.S.C. § 1319(d) (adjusted by 40 C.F.R. § 19.4 and Civil Monetary Penalty Inflation Adjustment Rule, 84 Fed. Reg. 2056-60 (Feb. 6, 2019)).

36.    The CWA does not contain a limitations period for citizen suit enforcement actions, but 28 U.S.C. § 2462 provides a five-year statute of limitations for a suit or proceeding for the enforcement of any civil fine or penalty.

## BACKGROUND FACTS

### East Fork South Fork Salmon River Watershed

37.    The EFSF Salmon River is a perennial tributary of the South Fork Salmon River, which is a tributary to the Salmon River.

38.    As illustrated on Map 2 below, Midas Gold's Site contains many of the streams that comprise the headwaters of the EFSF Salmon River, including Meadow Creek, Sugar Creek, West End Creek, and Fiddle Creek. Also within the Site, the EFSF Salmon River cascades into the Glory Hole mining pit, which impounds the River until it eventually flows out through a

COMPLAINT - 11

channel on the pit's north side. Fish passage above the Glory Hole in the EFSF Salmon River has been blocked since the Glory Hole was constructed during World War II.



39.     The EFSF Salmon River and its tributaries are home to three fish species listed as "threatened" under the ESA: Snake River spring/summer Chinook salmon, Snake River steelhead, and bull trout.

40.     The entire length of the EFSF Salmon River, including the stretch through Midas Gold's Site, is designated critical habitat under the ESA for Snake River spring/summer Chinook

COMPLAINT - 12

salmon. Downstream of the Glory Hole, the EFSF Salmon River is designated critical habitat for Snake River steelhead, and so too is Sugar Creek (a tributary to the EFSF Salmon River within Midas Gold's Site). The EFSF Salmon River and three of its tributaries within the Site (Meadow Creek, West End Creek, and Fiddle Creek) are designated critical habitat for bull trout.

41.     The EFSF Salmon River additionally provides important habitat to other fish and wildlife species, which the Tribe also reserved the right to access in its 1855 Treaty with the United States.

42.     Water quality samples taken at Midas Gold's Site show elevated pollution levels in the EFSF Salmon River and its tributaries, including elevated levels of aluminum, arsenic, antimony, cyanide, iron, manganese, mercury, and thallium.

**Midas Gold's Site**

43.     Midas Gold's Site is located in Valley County, 92 miles northeast of Boise and 10 miles east of Yellow Pine, Idaho. The Site sits at an elevation of about 6,500 feet, with surrounding mountains rising to an elevation of almost 9,000 feet. The Site encompasses 28,477 acres of National Forest System lands and 1,350 acres of private, patented mining claims.

44.     From the 1920s through the 1950s, the Site was mined intensively for gold, silver, antimony, tungsten, and mercury. The site was again mined from the 1970s to the 1990s. This cumulative mining activity has created a disturbed footprint with open pits, waste rock dumps, spent heap leach piles/pads, and tailings piles that remain on the landscape today.

45.     In 2009, Midas Gold's corporate precursors began acquiring patented and unpatented mining claim(s), conducting exploration activities, and extensively studying the Site, including its water resources. Since at least 2012, Midas Gold has held an interest in all the

COMPLAINT - 13

patented and unpatented mining claims within the Site, including all lands where the point source discharges are located.

46.     In 2016, Midas Gold submitted a proposal—the Stibnite Gold Project—to the U.S. Forest Service seeking approval to construct and operate a gold mine at the Site over the course of twenty years. Midas Gold, *Stibnite Gold Project: Plan of Restoration and Operations* (2016). Since then, the U.S. Forest Service has been working with Midas Gold and other state and federal regulatory agencies to prepare an Environmental Impact Statement as part of the process of considering whether to approve Midas Gold's proposal.

47.     Midas Gold proposes to re-mine some areas of the Site and to more than double the mining footprint at the Site with an additional 800 acres of activity on undisturbed fish and wildlife habitat. Midas Gold's mining activity may fill three headwater stream valleys with 450 million tons of mine tailings and waste rock and leave two or three new mine pits at the Site in perpetuity. *See* Map 3 below (illustrating Midas Gold's Proposed Mine):

COMPLAINT - 14



Figure 8-1, General Site Plan Layout

**Midas Gold's Unpermitted Pollution Discharges**

48.     Midas Gold is violating the CWA by continuing to discharge pollutants from numerous point sources at the Site, as detailed in the Tribe's NOI (Attachments 1 & 2) and further detailed below. Midas Gold's unpermitted pollution discharges at the Stibnite Project Site include the following point sources: (a) Glory Hole, (b) Bradley Tailings Pile and Keyway Dam, (c) Hangar Flats Tailings Pile, (d) Bailey Tunnel, (e) DMEA Adit and DMEA Waste Rock Dump, (f) Bonanza Adit, (g) Cinnabar Tunnel, and (h) Meadow Creek. These point sources are illustrated on Map 4 below:



COMPLAINT - 16

*Glory Hole*

49.     The Glory Hole is an open mining pit first excavated during World War II. The
Glory Hole is located within Midas Gold's patented mining claim(s) at the Site. Midas Gold has
conducted exploratory drilling in and around the Glory Hole and has proposed to re-mine the pit
to extract more ore as part of its Mine Proposal.

50.     The EFSF Salmon River flows north from its headwaters, entering the Glory Hole
by cascading down the steep walls of the mine pit. The Glory Hole pools and confines water into
a reservoir-like feature. On the north side of the Glory Hole, water discharges from the mine pit
through a small channel into the historical streambed of the EFSF Salmon River.

51.     The Glory Hole collects and concentrates contaminated sediments, causes
pollutants to leach from those sediments, and discharges elevated concentrations of pollutants
downstream.

52.     Over the years, significant quantities of mining-contaminated sediments have
built up in the bottom of the Glory Hole as it has captured contaminated sediments washing
down from upstream sources within the Site. The Glory Hole's walls also contain metal
pollutants, which erode into the Glory Hole, contributing additional contaminated sediment to its
bottom. The water chemistry and hydrologic conditions of the human-made Glory Hole cause
pollutants from these sediments to leach and mobilize into its water. The Glory Hole's walls also
contain seeps, which emit pollutants into the Glory Hole. The Glory Hole discharges the
pollutants leached and mobilized from its bottom and walls, including antimony, arsenic, iron,
and manganese, into the EFSF Salmon River on a daily basis through a small channel on the pit's
north end. The seeps themselves are also conveyances that discharge pollutants directly into the
Glory Hole.

COMPLAINT - 17

53.     Data collected upstream and downstream of the Glory Hole show it to be a major source of pollution for the EFSR Salmon River. In 2015, the U.S. Geological Survey estimated that the Glory Hole reach of the EFSF Salmon River contributed an average of 2,150 pounds of arsenic, 1,010 pounds of antimony, and 617 pounds of dissolved manganese into the EFSF Salmon River annually, from 2012-2014. A review of the available data collected by Midas Gold shows that the pollutant loads downstream of the Glory Hole are 30 percent to 50 percent higher than those measured upstream.

54.     Pollutants have been discharged from the Glory Hole into the EFSF Salmon River, and from the seeps on the Glory Hole walls, on a daily basis for at least five years preceding the date of this Complaint. Despite having access to, and control over, the Glory Hole for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

55.     These pollution discharges from the Glory Hole are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### *Bradley Tailings Pile & Keyway Dam*

56.     The Bradley Tailings Pile (also known as the Historic Tailings and Spent Ore Disposal Area) is located on Midas Gold's patented mining claim(s) at the Site. It is a legacy mine tailings deposit site located upstream of the Glory Hole, adjacent to Meadow Creek. *See* Map 3, *supra*. Meadow Creek is a perennial tributary of the EFSF Salmon River.

57.     The Bradley Tailings Pile is comprised of mine tailings that contain high concentrations of arsenic, aluminum, antimony, and iron. On one end of the Bradley Tailings Pile is a human-made retaining berm known as the Keyway Dam.

COMPLAINT - 18

58.     The Bradley Tailings Pile is not capped, so rain and snow melt infiltrate it, coming into contact with, and leaching pollutants out of, contaminated tailings. This polluted water is then confined behind the Keyway Dam from which it discharges from three surface points at the base of the Dam. The discharged leachate flows overland through the Keyway Marsh, a delineated wetland, and then to the adjacent Meadow Creek, just a short distance away.

59.     Monitoring data show that the surface discharges from the Keyway Dam into Keyway Marsh and from the Keyway Marsh into Meadow Creek contain elevated levels of pollutants, including aluminum, antimony, arsenic, cyanide, iron, manganese, and mercury.

60.     In addition to these surface discharges, contaminated water from the Bradley Tailings Pile that builds up behind the Keyway Dam likely also discharges subsurface into the Keyway Marsh and Meadow Creek.

61.     Pollutants have been discharged from the Bradley Tailings Pile and Keyway Dam into the Keyway Marsh and Meadow Creek on a daily basis for at least five years preceding the date of this Complaint. Despite having access to, and control over, this area for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

62.     These pollution discharges from the Bradley Tailings Pile are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### Hangar Flats Tailings Pile

63.     The Hangar Flats Tailings Pile is a legacy tailings deposit site that sits adjacent to Meadow Creek, just northwest and downstream of the Bradley Tailings Pile. *See* Map 3, *supra*. It is located on Midas Gold's patented mining claim(s).

COMPLAINT - 19

64.     The Hangar Flats Tailings Pile is comprised of mine tailings that contain elevated concentrations of arsenic, antimony, aluminum, iron, manganese, and mercury. The Hangar Flats Tailings Pile is not capped, so rain and snow melt infiltrate it, leach pollutants out of the contaminated mine tailings, and discharge those pollutants through two seeps.

65.     Monitoring data show that these seeps are discharging pollutants, including aluminum, antimony, arsenic, cyanide, iron, manganese, mercury, and thallium, into the floodplain of Meadow Creek, which shares both surface and subsurface hydrological connections with Meadow Creek. Polluted water from the Hanger Flats Tailings Pile seeps has also been seen flowing overland into Meadow Creek on at least one occasion and is thus likely to flow directly into Meadow Creek on other occasions when hydrologic conditions are similar.

66.     Pollutants have been discharged from the Hangar Flats Tailings Pile to the hydrologically-connected Meadow Creek floodplain and to Meadow Creek on numerous occasions in the five years preceding the date of this Complaint. Despite having access to, and control over, this area for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

67.     These pollution discharges from the Hanger Flats Tailings Pile are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### *Bailey Tunnel*

68.     The Bailey Tunnel is a large tunnel that was constructed around 1943 to divert the EFSF Salmon River around the Glory Hole and into one of its perennial tributaries, Sugar Creek. The Bailey Tunnel has been abandoned since 1955 when the EFSF Salmon River was returned to its original course, but it continues to discharge contaminated mine drainage into Sugar Creek. It

COMPLAINT - 20

is located on Midas Gold's patented mining claim(s) at the Site. Midas Gold has conducted drilling in the vicinity.

69.     Monitoring data show the Bailey Tunnel has discharged pollutants, including antimony, arsenic, iron, and manganese, into Sugar Creek.

70.      Pollutants have discharged from the Bailey Tunnel continuously, or at least intermittently, into Sugar Creek for at least five years preceding the date of this Complaint. Despite having access to, and control over, this area for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges.  These discharges are recurring and will continue until appropriate control measures are implemented.

71.     These pollution discharges from the Bailey Tunnel are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### *DMEA Adit & DMEA Waste Rock Dump*

72.     The Defense Minerals Exploration Administration ("DMEA") Adit and DMEA Waste Rock Dump are located between the Glory Hole and the Bradley Tailings Pile on Midas Gold's unpatented mining claim(s) at the Site. Adits are small exploratory tunnels bored into the mountainside, sometimes miles long, which are typically graded such that water drains out through the adit opening.

73.     Monitoring data show the DMEA Adit and DMEA Waste Rock Dump discharge pollutants, including aluminum, antimony, arsenic, iron, manganese, and mercury, into the EFSF Salmon River. Discharges from the DMEA Adit infiltrate into the porous DMEA Waste Rock Dump, emerge overland from a defined seep at the toe of the DMEA Waste Rock Dump, and flow into the EFSF Salmon River.

COMPLAINT - 21

74.     Pollutants have been discharged from the DMEA Adit and the DMEA Waste

Rock Dump into the EFSF Salmon River continuously for at least five years preceding the date

of this Complaint. Despite having access to, and control over, this area for at least the last five

years, Midas Gold has not taken adequate steps to stop these discharges. These pollution

discharges are recurring and will continue until appropriate control measures are implemented.

75.     These pollution discharges from the DMEA Adit and DMEA Waste Rock Dump

are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA

permitting requirements.

### *Bonanza Adit*

76.     The Bonanza Adit seep originates as a small pond on a bench on a hillside that

has been excavated across its face by legacy exploration activities. The seep is located on Midas

Gold's unpatented mining claim(s), and Midas Gold has also conducted drilling in the near

vicinity.

77.     Monitoring data show the Bonanza Adit seep flows at a low volume year-round

out of the pond, downhill, across a road, and onto the floodplain of Sugar Creek, where, on at

least several occasions during the five years preceding the date of this Complaint, it discharged

pollutants, including aluminum, antimony, arsenic, cyanide, iron, manganese, and mercury, into

the Sugar Creek floodplain.

78.     The Bonanza Adit's discharges likely reach Sugar Creek through shallow

subsurface hydrologic connections.

79.     Pollutants have, therefore, been discharged from the Bonanza Adit continuously

into Sugar Creek for at least five years preceding the date of this Complaint. Despite having

access to, and control over, this area for at least the last five years, Midas Gold has not taken

COMPLAINT - 22

adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

80.     These pollution discharges from the Bonanza Adit are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### Cinnabar Tunnel

81.     The Cinnabar Tunnel is a legacy adit, the entrance to which is located in the middle of the hillside east of the EFSF Salmon River upstream of the Glory Hole. Water emerges from the Cinnabar Tunnel as a seep. The Cinnabar Tunnel is located on Midas Gold's unpatented mining claim(s) at the Site. Midas Gold has conducted drilling in the vicinity.

82.     The Cinnabar Tunnel discharges pollutants overland, including antimony and arsenic, into the EFSF Salmon River at, at least, three discrete, identifiable points.

83.     Pollutants have been discharged from the Cinnabar Tunnel, including arsenic and antimony, into the EFSF Salmon River on a regular basis for at least five years preceding the date of this Complaint. Despite having access to, and control over, this area for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

84.     These pollution discharges from the Cinnabar Tunnel are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

### Meadow Creek Adit

85.     The Meadow Creek mine adit seep is located above the heap leach pile at the base of the Hangar Flats hillside. The seep is located upstream of the Glory Hole, adjacent to Meadow Creek, on a Midas Gold patented mining claim at the Site. Midas Gold has conducted drilling in the vicinity.

COMPLAINT - 23

86.     Monitoring data show the Meadow Creek Adit has discharged pollutants, including aluminum, antimony, arsenic, iron, manganese, and mercury, into the EFSF Salmon River.

87.     The Meadow Creek mine adit seep discharges into a drainage ditch at the base of the hillside during the spring snowmelt season. Nez Perce Tribal staff observed water from this seep entering into the EFSF Salmon River, overland, in May 2018, and it has likely discharged on numerous other occasions when hydrologic conditions were similar. Despite having access to, and control over, this area for at least the last five years, Midas Gold has not taken adequate steps to stop these discharges. These pollution discharges are recurring and will continue until appropriate control measures are implemented.

88.     These pollution discharges from the Meadow Creek Adit are not authorized by a valid NPDES permit(s) and are not otherwise exempt from CWA permitting requirements.

## CLAIM FOR RELIEF

### Violations of CWA § 301(a), 33 U.S.C. § 1311(a)

89.     The Tribe realleges and incorporates by reference all preceding paragraphs.

90.     Defendants, jointly and severally, have violated and continue to violate the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from the above-identified point sources at the Site into waters of the United States without a valid NPDES permit(s) authorizing the discharges.

91.     Such violations have occurred regularly or continuously for at least the last five years, are ongoing now, and will continue into the future, unless the Court grants relief as requested herein.

92.     These violations are violations of an "effluent standard or limitation" as defined by the CWA. 33 U.S.C. § 1365(f).

COMPLAINT - 24

93.     Defendants are each a "person" under the CWA. *Id.* § 1362(5).

94.     Defendants are an owner and/or operator of the facilities and activities where these point source discharges occurred and are continuing to occur under CWA regulations. 40 C.F.R. § 122.2.

95.     Aluminum, antimony, arsenic, cyanide, iron, manganese, mercury, and thallium are pollutants under the CWA. 33 U.S.C. § 1362(6).

96.     The EFSF Salmon River, Keyway Marsh, Meadow Creek, and Sugar Creek are "navigable waters" under the CWA. *Id.* § 1362(7).

97.     The Glory Hole, Bradley Tailings Pile and Keyway Dam, Hangar Flats Tailings Pile, Bailey Tunnel, DMEA Adit and DMEA Waste Rock Dump, Bonanza Adit, Cinnabar Tunnel, and Meadow Creek are point sources that discharge pollutants under the CWA, because they each add pollutants to a water of the Unites States via one or more discernible, confined, and discrete conveyances. § 1362(12), (14).

98.     Defendants own the patented claims within which the above-mentioned point sources are located and have plans to conduct further minerals operations at the Site, which encompasses all the above-mentioned patented and unpatented mining claim(s).

99.     The Tribe is harmed by Defendants' CWA violations, and seeks declaratory and injunctive relief, as set forth below, plus an award of civil penalties for each and every CWA violation for the last five years and for each ongoing and future violation that occurs until judgment is entered in this case.

100.    Defendants' ongoing CWA violations threaten continuing and irreparable harm to the EFSF and its water quality, fisheries, and other resources, and to the Tribe's interests,

warranting the entry of declaratory relief, injunctive relief and/or an award of civil penalties under the CWA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Declare, hold, and adjudge that Defendants, jointly and severally, are in violation of CWA Section 301, 33 U.S.C. § 1311(a), by discharging pollutants from each and all of the above-identified point sources without a valid NPDES permit(s);

B.     Assess civil penalties, to be awarded to the U.S. Treasury, against Defendants, jointly and severally, for each CWA violation committed over the last five years, and each similar violation committed by Midas Gold until judgment is entered by this Court, pursuant to Section 309 of the CWA, 33 U.S.C. § 1319(d);

C.     Enjoin Defendants, jointly and severally, under Section 505 of the CWA, 33 U.S.C. § 1365(a) and 28 U.S.C. § 2201-2202, from further discharging pollutants to the EFSF Salmon River, Keyway Marsh, Meadow Creek, Sugar Creek, or any other waters of the United States except as expressly authorized by the CWA in compliance with and the limitations and conditions of all applicable NPDES permit(s);

D.     Enjoin Defendants, jointly and severally, under CWA Section 505, 33 U.S.C. § 1365(a) and 28 U.S.C. § 2201-2202, to take specific actions to evaluate and remediate the environmental harm caused by their CWA violations, to provide pollution monitoring and mitigation measures, and to implement any additional measures necessary to ensure Defendants' compliance with the CWA.

E.    Grant such other preliminary and/or permanent injunctive relief as the Tribe may from time to time request during the pendency of this case to prevent further harm to the EFSR Salmon River and the Tribe's interests;

F.    Award Plaintiff its reasonable litigation costs and expenses, including attorney and expert fees, incurred in bringing this action under CWA Section 505(d), 33 U.S.C. § 1365(d) and any other applicable cost and fee recovery statutes; and

G.    Award such other relief as the Court may deem just and proper.

DATED this 8th day of August 2019.          Respectfully Submitted,


/s/ *Amanda Wright Rogerson*
Amanda Wright Rogerson (ISB No. 9885)
Bryan Hurlbutt (ISB No. 8501)
Laurence J. Lucas (ISB No. 4733)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
bhurlbutt@advocateswest.org
arogerson@advocateswest.org
llucas@advocateswest.org

/s/ *Michael Lopez*
Michael Lopez (ISB No. 8356)
NEZ PERCE TRIBE
P.O. Box 305
Lapwai, ID 83540
(208) 843-7355
mlopez@nezperce.org

*Attorneys for Plaintiff Nez Perce Tribe*


COMPLAINT - 27