UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEZ PERCE TRIBE,<br><br>Plaintiff,<br><br>v.<br><br>MIDAS GOLD CORP., MIDAS GOLD IDAHO, INC., IDAHO GOLD RESOURCES COMPANY, LLC, and STIBNITE GOLD COMPANY,<br><br>Defendants. | Case No. 1:19-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion to Stay Litigation. Dkt. 15. The Court heard argument on December 16, 2019 and took the motion under advisement.[1] For the reasons that follow the Court will deny the motion.

---

[1] The Court also heard arguments on Defendants' Motion to Dismiss (Dkt. 19), which the Court orally denied. The Defendants had moved to dismiss under Fed. R. Civ. Pro. 12(b)(6) & (7). In its oral ruling the Court denied the Rule 12(b)(6) motion because it found that the complaint stated plausible claims with enough specificity to put the Defendants on clear notice of
(Continued)

## BACKGROUND

Midas Gold Corp. is a Canadian corporation that was established in 2011. *Compl.* ¶ 28; *Def.'s Br.* at 7, Dkt. 15-1. Midas Gold Idaho, Inc., Idaho Gold Resources Company, LLC, and Stibnite Gold Company are incorporated in Idaho and are corporate subsidiaries of Midas Gold Corp. *Compl.* ¶ 27; *Def.'s Br.* at 7, Dkt. 15-1. Midas Gold Corp. and its subsidiaries were established to develop commercially viable mining operations at the Stibnite Mining District in Valley County, Idaho.[2] *See Def.'s Br.* at 7-8, Dkt. 15-1. Midas holds multiple patented and unpatented mining claims in the District.

The Stibnite Mining District was first developed in the 1920's and produced precious metals through the 1990's. *Id.* at 5. Due to the historic mining operations in the Stibnite Mining District there have been multiple site characterizations and

---

their claims. Due to the nature of the parties and alleged discharges, the potential liability of each party is most efficiently resolved through discovery and a possible motion for summary judgment. The Court also denied the Rule 12(b)(7) motion because it found that the United States Forest Service was not an indispensable party, at least for the determination of the Defendants' liability as to alleged discharges from unpatented mining claims. *See* Fed. R. Civ. P. 19; *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983). Either party is free to file a motion to join the Forest Service if it becomes apparent that the Forest Service is a necessary party.

[2] Each of Midas Gold Corp.'s subsidiaries appear to have varying roles in developing the Stibnite site. Midas Gold Idaho appears to be the primary public facing company leading development of the project. *See Def.'s Br.* at 7-8, Dkt. 15-1. The Court will refer to the Defendants generally as Midas throughout this decision.

remediation efforts under CERCLA. *See id.* at 6 (citing consent decrees between EPA and past mine operators). However, as Defendants acknowledge, those cleanup efforts were not comprehensive and legacy areas of concern remain. *Id.*

As part of its efforts to establish mining operations, Midas is negotiating an Administrative Order on Consent ("AOC") with the EPA, Forest Service, IDEQ, and Shoshone-Bannock Tribes that would govern remediation of at least some portion of the District under the Comprehensive Environmental Response, Compensation and Liability Act of 1990 ("CERCLA"), 42 U.S.C. §§ 9601-9675. *Def.'s Br.* at 1, Dkt. 15-1; *see Def.'s Ex. 12*, Dkt. 23-3. As part of its AOC negotiations, exploration, and potential remediation efforts, Midas is undertaking environmental monitoring in the District. *Def.'s Br.* at 8, Dkt. 15-1

The Nez Perce Tribe commenced this action alleging Midas is violating the Clean Water Act, 33 U.S.C. § 1311. The Tribe alleges that Midas is discharging pollutants from eight point sources without obtaining National Pollutant Discharge Elimination System ("NPDES") Permits. *Compl.* ¶¶ 2-4.

Shortly after the Tribe filed its complaint, Midas filed its Motion to Stay the Litigation. Midas argues that this case should be stayed because once the AOC is finalized CERLCA § 113(h) will divest this Court of jurisdiction. *Def.'s Br.* at 1, Dkt. 15-1. Thus, Midas argues it will be more efficient stay this litigation instead

of wasting the parties' – as well as this Court's – resources on litigation which may ultimately be dismissed because of a jurisdictional defect. *Id.* at 3.

## LEGAL STANDARD

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–707 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). In deciding whether to grant a stay, the Court must weigh the competing interests of the parties, considering in particular: "[1] possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyear v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quotations omitted). The moving party has the burden of establishing "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

A stay may be appropriate when the result of a separate administrative proceeding has some bearing upon the district court case. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). "This rule ... does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. However, "[a] stay should not be granted unless it appears

likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id*. For that reason, a stay "should not be indefinite in nature." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

## ANALYSIS

Midas argues that allowing the CWA ligation to progress will impose a hardship. It argues that it is investor funded and the threat of the lawsuit may cause funding to dry up. *Def.'s Br.* at 16, Dkt. 15-1. Midas argues that the CWA suit proceeding in parallel to the AOC process will be a distraction from providing a site-wide remediation solution and will divert Midas's resources. *Def.'s Rep.* at 4, Dkt. 23. However, the inconvenience and expense required to defend a lawsuit "does not constitute a clear case of hardship or inequity." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citations omitted). Midas also suggests it would have as much as $4.1 million in quarterly operational delay costs. *Def.'s Br.* at 16, Dkt. 15-1. However, there is nothing in the record to show that these costs would be due to delay from the present suit. Instead Midas describes these costs as necessary to address quarterly permitting requirements. *Id.*

The Tribe argues that the ongoing unpermitted discharges of pollutants into the Salmon River and its tributaries constitutes harm to the Tribe and public. *Pl's*

*Resp.* at 18, Dkt. 22. Midas counters that these discharges have been happening for decades and that the CERCLA remedy will be more effective at addressing the Tribe's harm. *See Def.'s Rep.* at 5, Dkt. 23. The ongoing environmental harm from the unregulated discharge of pollutants is real irreparable harm.[3] *See Sierra Club, Hawaii Chapter v. City & Cty. of Honolulu,* 2007 WL 2694489, at *4 (D. Haw. Sept. 11, 2007).

Finally, Midas argues that the orderly course of justice strongly supports granting the stay. Midas and the Tribe dispute the speed at which the AOC will be finalized. Midas argues that the administrative progress is rapidly progressing. *Def.'s Rep.* at 1, Dkt. 23. The Tribe argues that it is uncertain when or if an AOC will be finalized. *See Pl.'s Resp.* at 16-17, Dkt. 22.

Midas cites *Perez v. Idaho Falls Sch. Dist. No. 91*, 2017 WL 743881, at *1 (D. Idaho Feb. 24, 2017) to argue that, because the AOC process will have some bearing on the instant action, it is prudent for the Court to issue a stay. In *Perez*, however, the court was considering whether to stay a case pending an ALJ's

---

[3] Midas disputes whether the alleged point sources at issue require NPDES permits. *See Def.'s Rep.* at 6 n.4, Dkt. 23. At this point of the litigation, the alleged discharges are sufficient to show harm, especially since Midas acknowledges that there are pollutant discharges from the Stibnite Mining District. The Court expresses no opinion on the merits of the underlying CWA claims.

decision that would have preclusive effect. Unlike the case here, the ALJ's decision in *Perez* was likely to be issued in a few months.

At the hearing, Midas suggested the Court stay this action for 180 days to allow them to make progress on the AOC negotiations. However, Midas offered no timeline for completion of the AOC. As far as the Court can tell from the record in this case the AOC is at best a rough draft now, and there is no indication that it will be completed in the next six months. *See Pl.'s Surrep.* At 4-5, Dkt. 26-2.

A stay should only be granted if the other proceedings will conclude in a reasonable time. *Leyva*, 593 F.2d at 864. Midas has simply not offered any evidence that the AOC will be completed in a reasonable time, especially in light of the ongoing environmental harm.

In conclusion, Defendants have not demonstrated significant hardship. In comparison, the Tribe has presented evidence that there will be real, tangible harm if the discharge of pollutants continues. While CERCLA §113(h) may eventually divest this Court of jurisdiction, there is no evidence that the AOC will be finalized in a reasonable time. Accordingly, the Court finds that the Defendants have not met their burden to stay this litigation. If finalization of the AOC does become imminent in the future the Defendants are free to file another motion to stay this litigation.

# ORDER

**IT IS ORDERED that**

1. Defendant's Motion to Stay Litigation (Dkt. 15) is **DENIED**.

DATED: January 8, 2020

_____
B. Lynn Winmill
U.S. District Court Judge