LAURA J. BROWN (PA Bar # 208171)
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-3376
laura.j.s.brown@usdoj.gov

*Counsel for Third Party Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEZ PERCE TRIBE,<br><br>  Plaintiff,<br><br>    v.<br><br>MIDAS GOLD CORP., MIDAS GOLD IDAHO, INC., IDAHO GOLD RESOURCES COMPANY, LLC, and STIBNITE GOLD COMPANY,<br><br>  Defendants/Third Party Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF AGRICULTURE; THE UNITED STATES FOREST SERVICE; SONNY PERDUE in his official capacity as U.S. Secretary of Agriculture; and VICKI CHRISTIANSEN in her official capacity as the Chief of the United States Forest Service.<br><br>  Third Party Defendants. | **Civil No. 1:19-cv-00307-BLW**<br><br><br>**THIRD PARTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPPORT OF MOTION TO STRIKE AND/OR DISMISS THIRD PARTY COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................ii

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD....................................................................................................... 3

I.      Motion to Strike ................................................................................................. 3

II.     Motion to Dismiss.............................................................................................. 4

ARGUMENT .................................................................................................................. 4

I.      Impleader Is Improper Because the United States Cannot Be Held Derivatively Liable to
Defendants. .................................................................................................................... 4

    A.  No Right to Contribution Exists under CWA Sections 301 and 309.................................. 5

    B.  Even if a Right of Contribution Exists, the Third Party Complaint Is Barred by the
    Doctrine of Sovereign Immunity................................................................................. 9

II.     The Third Party Complaint Must Be Dismissed for Lack of Standing............................. 11

CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**I.    Cases**

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ............................................................................................. 4

*Arizona v. Int'l Boundary and Water Comm'n*
Civ. No. 12-00644, 2015 WL 12838793 (D. Ariz. Dec. 30, 2015)............................ 8

*Arizona v. Int'l Boundary and Water Comm'n*
2016 WL 1128134 (D. Ariz. Mar. 23, 2016) ........................................................ 8

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009)............................................................................. 11

*Bryant v. Am. Seafoods Co.*,
348 F. App'x 256 (9th Cir. 2009)........................................................................ 13

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................................. 11

*City of San Diego v. Monsanto Co.*,
334 F. Supp. 3d 1072 (S.D. Cal. 2018) ................................................................ 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...................................................................................... 11, 12

*Clinton v. City of New York*,
524 U.S. 417 (1998) ...................................................................................... 12, 13

*Complaint of Berkley Curtis Bay Co.*,
557 F. Supp. 335 (S.D.N.Y. 1983) ....................................................................... 8

*Envtl. Conservation Org. v. Bagwell*,
Civ. No. 4:03-CV-807-Y, 2005 WL 8159255 (N.D. Tex. Sept. 29, 2005)............................ 6, 7

*Essilor Labs. of Am., Inc. v. St. Paul Fire & Marine Ins. Co.*,
Civ. No. 08-C-296, 2009 WL 142323 (E.D. Wis. Jan. 20, 2009)............................ 13

*F.A.A. v. Cooper*,
566 U.S. 284 (2012) ........................................................................................... 10

*First Am. Title Ins. Co. v. Ortiz*,
Civ. No. 11-00391, 2012 WL 13076302 (D.N.M. Aug. 29, 2012)..................................... 13, 14

*Frederick E. Bouchard, Inc. v. United States*,
    583 F. Supp. 477 (D. Mass. 1984) ..................................................................... 8, 9

*Glob. Sols., LLC v. MD Mktg., LLC*,
    Civ. No. 07-489, 2009 WL 3747174 (D. Idaho Nov. 3, 2009) ................................. 3

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*
    841 F. Supp. 2d 988 ....................................................................................... 8, 9

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ............................................................................................ 6

*Kim v. Fujikawa*,
    871 F.2d 1427 (9th Cir. 1989) ............................................................................. 5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................ 4

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
    422 F.3d 490 (7th Cir. 2005) ............................................................................. 13

*Lane v. Pena*,
    518 U.S. 187 (1996) .......................................................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 4, 14

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................................. 4

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
    453 U.S. 1 (1981) ................................................................................................ 6

*Mid-Valley Pipeline C. v. S.J. Louis Construction, Inc.*,
    847 F. Supp. 2d 982 (E.D. Ky. 2012) .................................................................. 8, 9

*Milwaukee v. Illinois*,
    451 U.S. 304 (1981) ........................................................................................ 5, 8

*Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*,
    934 F.2d 209 (9th Cir. 1991) ............................................................................ 5, 7

*Nat'l Audubon Soc'y v. Dep't of Water*,
    869 F.2d 1196 (9th Cir. 1988) ............................................................................. 6

iii

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ............................................................................................ 4

*Stewart v. Am. Int'l Oil & Gas Co.*,
  845 F.2d 196 (9th Cir. 1988) ....................................................................... 3, 4

*Sw. Adm'rs Inc. v. Rozay's Transfer*,
  791 F.2d 769 (9th Cir. 1986) ........................................................................... 3

*Texas Indus., Inc. v. Radcliff Materials*,
  451 U.S. 630 (1981) ...................................................................................... 5, 8

*United States Department of Energy v. Ohio*,
  503 U.S. 607 (1992) .................................................................................. 10, 14

*United States v. Bailey*,
  516 F. Supp. 2d 998 (D. Minn. 2007) .............................................................. 7

*United States v. Bear Marine Servs.*,
  509 F. Supp. 710 (E.D. La. 1980) ................................................................. 8, 9

*United States v. Dillon*,
  Civ. No. 1:17-498, 2019 WL 79359 (D. Idaho Jan. 2, 2019) ........................ 3, 5

*United States v. One 1977 Mercedes Benz,*
  708 F.2d 444 (9th Cir. 1983) ........................................................................... 3

*United States v. Savoy Senior Hous. Corp.*,
  Civ. No. 6:06-031, 2008 WL 631161 (W.D. Va. Mar. 6, 2008) ..................... 6, 7

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ....................................................................................... 15

## II.    Statutes and Court Rules

33 U.S.C. § 1311 ................................................................................................. 1, 7

33 U.S.C. § 1319 .................................................................................................... 5

33 U.S.C. § 1319(b) ............................................................................................... 7

33 U.S.C. § 1319(d) ...................................................................................... 2, 7, 14

33 U.S.C. § 1321 ................................................................................................. 5, 8

33 U.S.C. § 1321(h) ............................................................................................... 8

33 U.S.C. § 1365 ................................................................................................ 5

33 U.S.C. § 1365(a) ..................................................................................... 9, 14

### III.    Rules

Fed. R. Civ. P. 14(a)(4) ................................................................................ 1, 3

Fed. R. Civ. P. 12(b)(1) .......................................................................... 1, 4, 15

Fed. R. Civ. P. 14(a) .............................................................................. 3, 5, 15

The United States of America, the U.S. Department of Agriculture, the United States Forest Service, Mr. Sonny Perdue, in his official capacity as U.S. Secretary of Agriculture, and Ms. Vicki Christiansen, in her official capacity of the Chief of the United States Forest Service, (collectively "the United States" or "Third Party Defendants") submit this memorandum of law in support of their Motion to Strike or, in the alternative, to Dismiss the Third Party Complaint filed against them.  Pursuant to Rule 14(a)(4) of the Federal Rules of Civil Procedure, the United States requests that the Court strike Defendants' Third-Party Complaint, ECF No. 51, because Defendants cannot maintain a claim for contribution against the United States as a matter of law. Alternatively, if the Court declines to strike the Third Party Complaint, the United States requests that this Court dismiss it for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because Defendants lack standing.

## BACKGROUND

On August 8, 2019, the Nez Perce Tribe ("Plaintiff") filed suit against Midas Gold Corp., Midas Gold Idaho, Inc., Idaho Gold Resources Company, LLC, and Stibnite Gold Company (collectively "Midas" or "Defendants") alleging that Midas discharged and continues to discharge pollutants from at least eight point sources at the Stibnite Gold Project site ("Site") into the East Fork South Fork Salmon River ("EFSF Salmon River") and its tributaries.  ECF No. 1, Complaint ¶¶ 2, 48.  Plaintiff further alleges that Midas is discharging without a National Pollutant Discharge Elimination System ("NPDES") permit in violation of Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311.  *Id.*  ¶ 2.  Plaintiff alleges that Midas has acquired land and mineral interests at the Site for the purposes of constructing a gold mine and that Midas has ownership and/or operational control over the land where the pollutants discharge.  *Id.* ¶ 5. Plaintiff seeks declaratory and injunctive relief prohibiting Midas from discharging pollutants

1

into the EFSF Salmon River without a NPDES permit, as well as civil penalties pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and an award of litigation costs.  *Id.* ¶ 7.

After filing an unsuccessful motion to dismiss, *see* ECF Nos. 19 and 28, Midas answered the complaint on January 7, 2020, ECF No. 30.  In its Answer, Midas asserts that it cannot be liable under the CWA for discharges originating from lands on which they hold unpatented mining claims—lands that are "owned in fee by the United States" and are managed by the United States Forest Service ("USFS").  ECF No. 30, Defendants' Additional Statements and Defenses, ¶ 2, at 28.  On August 18, 2020, Midas filed a motion seeking leave to file a third party complaint against the United States.  ECF No. 44.  Shortly thereafter, Plaintiff and Midas filed a stipulation for approval seeking that the Court grant Midas' motion and allow Midas to file the third party complaint.  ECF No. 46.  Without issuing an opinion on the substance of Midas' motion, and pursuant to the parties' stipulation, the Court granted Midas' motion to file a third party complaint against the United States, ECF No. 47, which Midas filed on September 9, 2020, ECF No. 51.

In its Third Party Complaint, Midas alleges that four of the eight point sources identified in Plaintiff's complaint are either fully or partially on National Forest System lands (on which one or more of the Defendants holds unpatented mining claims).  ECF No. 51, Third Party Complaint, ¶ 5.  Midas alleges that, "[d]ischarges from these locations undermine Midas's efforts and vision to restore the Site and environment concurrent with all future mining phases under its Plan of Restoration and Operations ("PRO") which is now undergoing review by USFS," and that "Midas may be forced to incur additional costs to remedy the waters impacted by the discharge of pollutants . . . to complete the planned restoration as envisioned in its PRO."  *Id.* ¶ 8.  Midas further alleges that if Plaintiff's CWA violation claims are true, and the discharges

are occurring from land allegedly "owned and operated by the United States," then Midas may

be subject to "potential clean-up costs and penalties associated with those discharges." *Id.* ¶ 105.

Midas seeks declaratory and injunctive relief as well as an award of civil penalties. *Id.* ¶¶ 119-

20.

## LEGAL STANDARD

### I.      Motion to Strike

Federal Rule of Civil Procedure 14(a) states that a "defending party, as a third-party

plaintiff, may cause a summons and complaint to be served upon a person not a party to the

action who is or may be liable to [the third-party plaintiff] for all or part of the plaintiff's claim

against [the third-party plaintiff]." Fed. R. Civ. P. 14(a).  "Contained within the rule itself is the

requirement that the third party have some liability owed to the defendant as a result of the

claims asserted in the complaint.  In other words, the third party must be 'secondarily or

derivatively liable to the defendant for all or part of the plaintiff's original claim.'" *Glob. Sols.,*

*LLC v. MD Mktg., LLC*, Civ. No. 07-489, 2009 WL 3747174, at *5 (D. Idaho Nov. 3, 2009)

(quoting S*w. Adm'rs Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986)).  Third-party

claims "cannot simply be an independent or related claim but must be based upon plaintiff's

claim against defendant."  *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199-200 (9th Cir.

1988).  Thus, "independent claims are not permitted in third-party complaints."  *United States v.*

*Dillon*, Civ. No. 1:17-498, 2019 WL 79359, at *2 (D. Idaho Jan. 2, 2019) (Winmill, J.)

Federal Rule of Civil Procedure 14(a) provides that "[a]ny party may move to strike the

third-party claim, to sever it, or to try it separately."  Fed. R. Civ. P. 14(a)(4).  "The decision to

allow a third-party defendant to be impleaded under Rule 14 is entrusted to the sound discretion

of the trial court."  *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir. 1983).

## II.      Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether the complaint sets forth allegations sufficient to establish the court's jurisdiction over the subject matter of the claims for relief.  Because federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute, the first and fundamental question presented by every case is whether the court has jurisdiction to hear it. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be established as a threshold matter").  Where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause." *Id.* (internal quotation marks omitted).  Plaintiffs bear the burden of establishing that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)

## ARGUMENT

## I.      Impleader Is Improper Because the United States Cannot Be Held Derivatively Liable to Defendants.

Midas has not brought a valid third party claim against the United States because Midas has not alleged (and cannot allege) a valid claim of contribution or indemnity against the United States.  As discussed above, a third-party claim is only permitted when "the third party's liability is in some way dependent on the outcome of the main claim and is secondarily or derivative thereto." *Stewart*, 845 F.2d at 199.  Thus, Midas' third party complaint is valid only if the

United States "is or may be liable to [Midas] for all or part of [Nez Perce's] claim against [Midas]." Fed. R. Civ. P. 14(a). As the Ninth Circuit explained, "while Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability." *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989). The Clean Water Act provisions at issue in this case do not give rise to a right of contribution for any CWA civil penalties or injunctive relief the Court may order to remedy the violations in this case.[1] Furthermore, even if a claim for contribution exists under the CWA for the types of violations alleged, Midas cannot bring a contribution claim here because the United States has not waived sovereign immunity to allow such claims. Because the United States cannot be derivatively liable to Midas for Plaintiff's claims, and because "independent claims are not permitted in third-party complaints," *Dillon*, 2019 WL 79359, at *2, the Court should strike the Third Party Complaint.

**A.  No Right to Contribution Exists under CWA Sections 301 and 309.**

"A defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute *only if* such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law." *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 212 (9th Cir. 1991) (emphasis added) (citing *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 638 (1981) (no right of

---

[1] The CWA contains a specific provision, 33 U.S.C. § 1321, that governs liability for, and cleanup of, discharges of oil and hazardous substances. This provision, which is not applicable in this lawsuit, contains its own scheme for liability, remedies, enforcement, judicial review, and actions against third parties. Except as where we state otherwise, the arguments in this brief are limited to the provisions of the CWA that are enforceable through Section 309, 33 U.S.C. § 1319, or the citizens suit provision, 33 U.S.C. § 1365, such as the provisions at issue in the present case.

contribution under antitrust laws)).  Here, no language in the CWA creates a right of contribution

for the violations alleged in the Third Party Complaint.  Nor is such a right implicit in the CWA.

To the contrary, the Supreme Court has held that "Congress intended to foreclose implied private

actions" in the CWA.  *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1,

21 (1981) ("[B]oth the structure of the [CWA] and [its] legislative history lead us to conclude

that Congress intended that private remedies in addition to those expressly provided should not

be implied.  Where, as here, Congress has made clear that implied private actions are not

contemplated, the courts are not authorized to ignore this legislative judgment.").

    In addition, there is no federal common law claim for contribution arising from the CWA.

The Supreme Court has held that the CWA creates "an all-encompassing program of water

pollution regulation" that "has occupied the field through the establishment of a comprehensive

regulatory program," which "strongly suggests that there is no room for courts to attempt to

improve on that program with federal common law."  *Milwaukee v. Illinois*, 451 U.S. 304,

317-32 (1981); *see Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 489 (1987) (noting that, in

*Milwaukee*, "the Court held that federal legislation now occupied the field, pre-empting all

federal common law."); *see generally Nat'l Audubon Soc'y v. Dep't of Water*, 869 F.2d 1196

(9th Cir. 1988) (rejecting federal common law nuisance claims for air and water pollution).

    Consistent with these principles, at least three district courts, in cases similar to this one,

have held that the CWA provisions at issue here do not give rise to a cause of action for

contribution.  *United States v. Savoy Senior Hous. Corp.*, Civ. No. 6:06-031, 2008 WL 631161,

at *5 (W.D. Va. Mar. 6, 2008) ("The CWA contains no express provision allowing for

contribution, and the federal courts have held that no private remedies should be implied to

remedy CWA violations."); *Envtl. Conservation Org. v. Bagwell*, No. 4:03-CV-807-Y, 2005 WL

8159255, at *4 (N.D. Tex. Sept. 29, 2005) (concluding that the defendants failed to demonstrate that a right of contribution exists regarding claims asserted under the CWA); *see also United States v. Bailey*, 516 F. Supp. 2d 998, 1020 (D. Minn. 2007) (ruling that landowner who violated CWA could not implead third party defendant for purposes of injunction because nothing in the CWA gave landowner a right of indemnity or contribution).

In *Bagwell*, *supra*, an environmental group filed a CWA citizen suit against the developers of a residential subdivision, alleging that the developers violated the CWA by failing to manage stormwater runoff from the project.  2005 WL 8159255, at *1.  The developers then filed a third party complaint seeking contribution and indemnification from other parties involved in the project.  *Id.*  The court rejected the claims.  Citing *Mortgages, Inc.*, *supra*, the court concluded that a right to contribution/indemnification could only arise through the affirmative creation of such a right by Congress, or via the power of the courts to formulate federal common law.  *Id.* at *4.  The court then held that there was no express or implied right to contribution in the CWA, nor did federal common law provide such a right.  *Id.* at *5-6.

Similarly, in *Savoy*, *supra*, the United States brought a CWA suit against the developers of a retirement community, alleging that the developers violated Section 301 of the CWA, 33 U.S.C. § 1311, by illegally discharging pollutants into waters of the United States without the required CWA permits.  2008 WL 631161, at *1.  For these violations, the United States sought civil penalties and injunctive relief pursuant to 33 U.S.C. § 1319(b), (d).  *Id.*  The developers sought to file a third party complaint seeking contribution and indemnification from other parties involved in the project.  *Id.*  The court rejected defendant's third-party complaint.  In doing so, the court held that a right of contribution could arise only "through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or second, through the

power of federal courts to fashion a common law right of contribution." *Id.* at *5 (quoting *Texas Industries,* 451 U.S. at 638). Like the court in *Bagwell*, the court held that there was no express or implied right to contribution in the CWA, nor did federal common law provide such a right. *Id.*

Only one district court has held that contribution is available for violations of the CWA provisions relevant here. In *Arizona v. International Boundary & Water Commission*, the court agreed with the courts in *Bagwell*, *Savoy*, and *Bailey*, *supra*, that the CWA does not expressly or implicitly create a right to contribution, but mistakenly concluded that there is a right to contribution—admittedly on a motion by the government—under federal common law for CWA claims. Civ. No. 12-00644, 2015 WL 12838793, at *2 (D. Ariz. Dec. 30, 2015), *report and recommendation adopted*, 2016 WL 1128134 (D. Ariz. Mar. 23, 2016). However, in finding that such a common law right existed, the court relied exclusively on cases in which the CWA claim arose under Section 311, 33 U.S.C. § 1321, the provision of the CWA governing spills of oil and hazardous substances. *Id.* at *2.[2] As explained above, *see* note 1 *supra*, Section 311 contains its own scheme for liability, remedies, enforcement, judicial review, and actions against third parties that is separate and distinct from the rest of the CWA. Moreover, Section 311(h) provides that "the liabilities established *by this section* shall in no way affect any rights which (1) the owner or operator of a vessel or of an onshore facility or an offshore facility may have against any third party whose acts may in any way have caused or contributed to such discharge. . ." 33 U.S.C. § 1321(h) (emphasis added). Based on the language of this subsection, courts have held that

---

[2] In finding a right to contribution the court relied on the following cases: *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 841 F. Supp. 2d 988, 1005 (E.D. La. 2012); *Mid-Valley Pipeline C. v. S.J. Louis Construction, Inc.*, 847 F. Supp. 2d 982, 987-88 (E.D. Ky. 2012); *Complaint of Berkley Curtis Bay Co.*, 557 F. Supp. 335, 338-39 (S.D.N.Y. 1983); *United States v. Bear Marine Servs.*, 509 F. Supp. 710, 716 (E.D. La. 1980); *Frederick E. Bouchard, Inc. v. United States*, 583 F. Supp. 477, 481-82 (D. Mass. 1984). *Id.*

CWA Section 311 preserves a right of contribution.  *See Bear Marine Servs.*, 509 F. Supp. at 716

(citing subsection (h) as preserving a right to contribution under CWA Section 311); *Bouchard*,

583 F. Supp. at 482 ("The clear intent of [Section 311(h)(1)] is to preserve pre-existing . . .

remedies at least as against any non-discharging third party not solely responsible for causing an

oil spill."); *In re Oil Spill*, 841 F. Supp. 2d at 1005 (recognizing that courts have interpreted

section 311(h) as preserving a right to equitable contribution); *Mid-Valley Pipeline Co.*, 847 F.

Supp. 2d at 986  (concluding that Section 311(h) preserved the common law right to

contribution).

       In sharp contrast, no such language preserving a right to contribution is included in the

provisions of the CWA that Plaintiffs and Defendants rely upon in this action.  And the court

should not create such a right because, as the Supreme Court in *Milwaukee* explained, the CWA

creates "an all-encompassing program of water pollution regulation" and, thus, there is "no room

for courts to attempt to improve on that program with federal common law."  451 U.S. at 318-19.

Thus, this Court should adopt the correct reasoning of *Bagwell*, *Savoy*, and *Bailey*, and find that

the CWA provisions at issue here do not give rise to the right of contribution.

       **B.  Even if a Right of Contribution Exists, the Third Party Complaint Is Barred by
           the Doctrine of Sovereign Immunity.**

       Even if a right of contribution exists under CWA, Midas cannot bring such a claim

because the United States has not waived sovereign immunity to claims for contribution against

it.  Midas brings its Third Party Complaint pursuant to the CWA's citizen suit provision,

33 U.S.C. § 1365(a).  The CWA's citizen suit provision provides a narrow waiver of the federal

government's sovereign liability for violations of "an effluent standard or limitation" or where

the EPA Administrator failed to perform a nondiscretionary duty required by the CWA.  33

U.S.C. § 1365(a).  The CWA's citizen suit provision further limits the court's jurisdiction "to

enforce such an effluent standard or limitation," or "to order the [EPA] Administrator to perform [a nondiscretionary] act or duty." *Id.*

But the citizen suit provision does not waive sovereign immunity for claims of contribution. On its face, nothing in the text of the provision suggests such a waiver. And such a waiver cannot be read into the provision, because it is well established that a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied . . . ." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "Any ambiguities in the statutory language are to be construed in favor of immunity so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (internal citations omitted).

Indeed, the Supreme Court emphasized the limited nature of the CWA's citizen suit provision's waiver of sovereign immunity in *United States Department of Energy v. Ohio*, 503 U.S. 607, 624 (1992). In *Ohio*, the Court acknowledged that the CWA's citizen suit provision explicitly allowed actions against "any person (including ... the United States)." *Id.* at 615-16. But, turning to the civil penalties provisions of the statute, the Court found that Congress had not expressed an intention to waive immunity by the United States for punitive fines. *Id.* at 624.

Likewise, nothing in the CWA's citizen suit provision demonstrates Congress' intent to waive sovereign immunity for contribution claims against the United States as a joint tort-feasor for alleged CWA violations. To allow such a claim to proceed "would expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires." *Cooper*, 566 U.S. at 299. Thus, because the United States cannot be held derivatively liable for the CWA violations alleged by Plaintiffs, the Third Party Complaint must be stricken.

**II.      The Third Party Complaint Must Be Dismissed for Lack of Standing.**

Even if the Court does not strike Midas' Third Party Complaint, the Court should dismiss it because Midas lacks standing to pursue it.  Article III of the Constitution limits federal court jurisdiction to resolving "cases" and "controversies."  *Lujan*, 504 at 560.  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

To support constitutional standing, the plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. *Lujan*, at 504 at 560.  The Supreme Court has repeatedly emphasized that a "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of possible future injury" dependent on contingent events are not sufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Indeed, "if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing."  *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).

Here, the speculative harms claimed by Midas as a result of the alleged discharges do not constitute an injury in fact because they are contingent upon events that have not yet occurred and may never occur.  In the Third Party Complaint, Midas sets forth two categories of potential injuries that it alleges may harm its property interests:  (1) the alleged discharges "undermine Midas's efforts and vision to restore the Site and environment concurrent with all future mining phases under its Plan of Restoration and Operations ('PRO') *which is now undergoing review by*

11

*USFS . . .*" and Midas "*may* be forced to incur additional costs to remedy the waters impacted by the discharge of pollutants. . .."; and (2) if Midas is found liable for the alleged discharges, Midas could be subject to "*potential* cleanup costs and penalties" associated with the discharges.  Third Party Complaint, ECF No. 51 ¶¶ 8, 96-97, 105 (emphasis added).  In other words, Midas will only be injured (1) *if* the Forest Service approves its PRO and, thereafter, Midas is unable to affect its "vision" of restoring the Site as it mines the Site, without incurring costs to remediate the alleged discharges; or (2) *if* Midas is found liable for the alleged discharges and subsequently subject to penalties and cleanup costs.  Because Midas' alleged harms are based on contingent future events, neither of which have occurred, and are dependent on decisions by independent actors (i.e., USFS, or a jury), Midas' alleged injuries are not "certainly impending."  *Clapper*, 568 U.S. at 414 (declining to "endorse standing theories that rest on speculation about the decisions of independent actors.").  Unless and until these events occur, Midas will not have suffered an injury that is "concrete and particularized" enough to constitute an injury-in-fact for standing purposes.

Moreover, while a contingent liability may, in some instances, present a sufficient injury to establish Article III standing, *Clinton v. City of New York*, 524 U.S. 417, 429-31 (1998), it cannot here.  To begin, in its Answer to Plaintiff's complaint, Midas asserts that it cannot be held liable for the discharges originating from land on which they hold unpatented mining claims, i.e., the discharges that form the basis of Midas' Third Party Complaint.  ECF No. 30, Defendants' Additional Statements and Defenses, ¶ 2 at 28.  If, as Midas contends, it cannot be held liable for these discharges, then Midas cannot assert standing on the basis of contingent liability.  *See City of San Diego v. Monsanto Co.*, 334 F. Supp. 3d 1072, 1084 (S.D. Cal. 2018) (holding the contingent liability posed by the pending lawsuit did not constitute an injury upon which

defendant could support a counterclaim because defendant denied it could be responsible for the underlying violations).

Additionally, regardless of Midas' denial of liability for the relevant discharges, Midas has not alleged that it has been "immediately and directly" harmed by the contingent liability as necessary to constitute an injury-in-fact sufficient to confer Article III standing. *Clinton*, 524 U.S. at 430. In *Clinton*, the Supreme Court held that the City of New York had standing to challenge the constitutionality of the federal line item veto, even though a pending administrative action could have waived the City's contingent liability. The Court held that "[t]he revival of a substantial contingent liability" that resulted from the President's exercise of the line item veto conferred standing because it "immediately and directly affects the borrowing power, financial strength, and fiscal planning of the" City. 524 U.S. at 431. In other words, the City's contingent liability—the potential to lose billions of dollars— effectuated an immediate and direct harm. Other circuit courts, including the Ninth Circuit, have recognized that for a contingent liability to support an Article III injury-in-fact, the party must allege that the contingent liability itself has *concrete and present* consequence on the plaintiff. *Bryant v. Am. Seafoods Co*., 348 F. App'x 256, 257-58 (9th Cir. 2009) (affirming dismissal where the plaintiff failed to adduce evidence establishing concrete, immediate harm caused by any contingent liability); *see Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) (holding that "the *present* impact of a future though uncertain harm may establish injury in fact for standing purposes") (emphasis added); *First Am. Title Ins. Co. v. Ortiz*, Civ. No. 11-00391, 2012 WL 13076302, at *10 (D.N.M. Aug. 29, 2012) ("In the absence of any evidence indicating that Plaintiffs' contingent liability has caused an actual or imminent harm," the court concluded the alleged injury was "too remote and uncertain to afford Article III standing."); *Essilor Labs. of*

13

*Am., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 08-C-296, 2009 WL 142323, at \*4 (E.D. Wis. Jan. 20, 2009) (dismissing complaint for lack of standing where plaintiff "failed to allege how it is presently impacted based upon a contingent liability."). Because Midas' complaint is devoid of any allegations that it is presently impaired by its potential liability, its alleged injury is "too remote and uncertain to afford Article III standing." *Ortiz*, 2012 WL 13076302, at \*10.

Furthermore, even if the threat of cleanup costs and penalties caused by this lawsuit constituted a sufficient injury-in-fact, that injury still would not support standing because it is unlikely to be redressed by a successful claim against the United States. The redressability component of standing requires that it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). First, the threat of cleanup costs and penalties will continue to exist even if Midas were to succeed in obtaining injunctive relief against the United States because Midas may still be liable for those discharges Plaintiff alleges are occurring from the point sources owned by one or more of the Defendants. Additionally, the United States cannot be held liable for civil penalties under the citizen suit provision of the CWA. *United States Department of Energy v. Ohio*, 503 U.S. at 617-18 (holding the CWA's "omission" of the United States from the definition of persons "renders the civil-penalties sections inapplicable to the United States.") And even if it could, the United States' civil penalty liability would have no effect on Midas' civil penalty liability, because civil penalty liability under the CWA is not joint and several. Rather, under the CWA, courts assess civil penalties against "any person" who violates the CWA, and the Act sets forth several factors that courts must take into account when determining penalties. 33 U.S.C. § 1319(d).[3] These factors require courts to look at the specific

---

[3] The citizen suit provision, 33 U.S.C. § 1365(a), authorizes district courts to apply "an appropriate civil penalties under section 1319(d)" of the CWA.

circumstances of individual defendants – *e.g.*, the defendant's ability to pay, its history of violations, and the economic benefit it derived from the violations.  *Id.*  Thus, courts must tailor the penalty to the circumstances of each individual defendant.  As a result, even if the Court were to penalize the United States, it would have no bearing on Midas' liability to Plaintiff here.

Because Defendants have failed to demonstrate Article III standing to support their Third Party Complaint, this Court lacks subject matter jurisdiction over it and it must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court strike Defendants' Third Party Complaint pursuant to Federal Rule of Civil Procedure 14(a) or, alternatively, dismiss the Third Party Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,


/s/ *Laura J. Brown*
LAURA J. BROWN (PA Bar # 208171)
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-3376
laura.j.s.brown@usdoj.gov

Dated:  November 23, 2020                    *Counsel for Third Party Defendants*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2020, the United States' Memorandum of Law in Support of its Motion to Strike or, in the Alternative, to Dismiss was hereby served on counsel for Defendants via the court's CM/ECF system.


*/s/Laura J. Brown*