# SETTLEMENT AGREEMENT
*Nez Perce Tribe v. Perpetua Resources, Corp. et al.*
No. 1:19-cv-00307-BLW (D. Idaho)

## RECITALS

WHEREAS, Plaintiff Nez Perce Tribe (hereafter, "Tribe") is a federally-recognized Indian tribe with headquarters on the Nez Perce Reservation in Lapwai, Idaho; and

WHEREAS, the Nez Perce people—the *Nimiipuu*—since time immemorial have occupied a large part of what today encompasses Idaho, Oregon, and Washington, including the South Fork of the Salmon River watershed in Idaho; and

WHEREAS, the Tribe and United States executed a treaty in 1855 in which the Tribe reserved to itself, and the United States secured, rights to continue to fish at all usual and accustomed fishing places, and to, hunt, gather, and pasture on open and unclaimed land including within the South Fork Salmon River watershed; and

WHEREAS, the East Fork of the South Fork ("EFSF") Salmon River is a major tributary of the South Fork Salmon River that historically experienced abundant runs of salmon, steelhead, and other native fisheries which remain central to the Tribe's culture, identity, and livelihood; and

WHEREAS, extensive mining operations have taken place historically within the EFSF Salmon River watershed, including an area in Valley County, Idaho known as the Stibnite Mining District (including the Cinnabar Mine Site (as identified further below)), which was mined extensively between the 1920s and the 1990s by mining companies or other operators that have since abandoned their mining operations and sites; and

WHEREAS, such historic mining activities left a legacy of mining waste piles, tunnels, adits, pits, and other contaminated sites that may be sources of pollution into the EFSF Salmon

SETTLEMENT AGREEMENT --    1

River and its tributaries, including mercury, arsenic, antimony, cyanide, and other pollutants which the Tribe has determined pose hazards to its treaty fisheries resources and its culture; and

WHEREAS, areas within the Stibnite Mining District have been subject of several federal consent decrees under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604 *et seq.*, the last of which was approved by the United States District Court in 2012, *United States of America v. Bradley Mining Company et.al*, Case No. 3:08-CV-03968 TEH and Case No. 3:08-CV-05501 TEH (N.D. Cal.) (Consent Decree filed April 19, 2012); and

WHEREAS, in each of these consent decrees, the United States and other previous operators exchanged covenants not to sue and the United States sought to extend CERCLA contribution protection for any future cleanup costs for the areas addressed in the decrees; and

WHEREAS, the Tribe has devoted substantial time and resources in restoring fisheries and habitat in the EFSF Salmon River that are threatened by mining-related legacy pollution, including from the Stibnite Mining District and the Cinnabar Mine Site; and

WHEREAS, Perpetua Resources is currently seeking permits and approvals from the Forest Service and numerous other federal, state, and local agencies related to undertaking new mining operations within the Stibnite Mining District, referred to as the Stibnite Gold Project (or "Project"); and

WHEREAS, Perpetua Resources has contended and continues to contend that it will construct and responsibly operate the Project in addition to reclaiming and restoring the Project Site; and

WHEREAS, the Tribe has opposed and continues to oppose permitting and development of the proposed Stibnite Gold Project; and

SETTLEMENT AGREEMENT --    2

WHEREAS, the Tribe filed this action ("Litigation") in the U.S. District Court for the District of Idaho on August 9, 2019, against Defendants Perpetua Resources Corp. (formerly known as Midas Gold Corp.), Perpetua Resources Idaho, Inc. (formerly known as Midas Gold Idaho, Inc.), Idaho Gold Resources Company, LLC, and Stibnite Gold Company (hereafter collectively referred to as "Perpetua Resources");[1] and

WHEREAS, the Tribe initiated the Complaint following the 60-day notification period to Perpetua Resources, Environmental Protection Agency ("EPA") and Idaho Department of Environmental Quality ("IDEQ"), as required under 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3(a); and

WHEREAS, the Tribe's Complaint alleged citizen suit claims ("Claims") under the Federal Water Pollution Control Act, 33 U.S.C. §1365(a) (also known as the "Clean Water Act" or "CWA"), regarding alleged unpermitted pollution discharges to the EFSF Salmon River and tributaries from eight (8) alleged point sources, as follows:

(a) Yellow Pine Pit (also sometimes known as the "Glory Hole"),

(b) Bradley Tailings Pile and Keyway Dam,

(c) Hangar Flats Tailings Pile,

(d) Bailey Tunnel,

(e) Defense Minerals Exploration Administration ("DMEA") Adit and DMEA Waste Rock Dump,

(f) Bonanza Adit,

(g) Cinnabar Tunnel, and

---

[1] On June 3, 2021, Idaho Gold Resources Company, LLC merged with the Stibnite Gold Company and is the sole surviving entity.

SETTLEMENT AGREEMENT --                    3

 (h) Meadow Creek Adit; and

 WHEREAS, such alleged point sources are features existing from historic mining operations at locations within the historic Stibnite Mining District including some within the Project Site, whose ownership history includes both private parties and/or the U.S. Department of Agriculture Forest Service ("Forest Service"); and

 WHEREAS, Perpetua Resources has never operated or contributed to the historic conditions at the Project Site; and

 WHEREAS, the Tribe's Complaint alleged that Perpetua Resources is liable under the CWA for such alleged unpermitted discharges as the owner or operator of lands and/or mineral interests where the alleged point sources are located, and which it acquired in seeking to develop the proposed Stibnite Gold Project; and

 WHEREAS, Perpetua Resources has denied and continues to deny any and all liability arising out of the transactions or occurrences alleged in the Tribe's Complaint; and

 WHEREAS, on September 9, 2020, Perpetua Resources filed a third-party action under the CWA against the Forest Service, alleging certain unpermitted point source violations within the Project Site; and

 WHEREAS, in the period after the Complaint was filed until January 2021, the Tribe and Perpetua Resources intensely litigated the Claims, including various motions, initial disclosures, and multiple rounds of production of documents in discovery by each side; and

 WHEREAS, on January 15, 2021, Perpetua Resources executed an Administrative Settlement Agreement and Order on Consent for Removal Actions ("ASAOC") with EPA and the Forest Service under CERCLA; and

SETTLEMENT AGREEMENT --    4

WHEREAS, EPA and the Forest Service executed the ASAOC with Perpetua Resources over the Tribe's opposition; and

WHEREAS, in agreeing to the ASAOC, EPA and the Forest Service recognized "the opportunity to address some legacy mining impacts on [Forest Service] lands through private investment;" *see* ASAOC at ¶ 9 p. 2; and

WHEREAS, the ASAOC determined that the conditions at the Stibnite Site "constitute an actual or threatened 'release' of a hazardous substance" and that the "removal actions … are necessary to protect the public health, welfare, or the environment," see ASAOC at ¶¶ 32-33 p. 9; and

WHEREAS, under Phase I of the ASAOC, Perpetua Resources has agreed to undertake certain CERCLA time critical removal actions within the Stibnite Mining District, as described more specifically within the ASAOC, at a cost so far of over $17.9 million; and

WHEREAS, under the ASAOC, Perpetua Resources agreed to dismiss its third-party complaint against the Forest Service; and

WHEREAS, implementation of the activities required under the ASAOC is now in its second full work season and Perpetua is obligated continue to execute response actions under the ASAOC in the Stibnite Mining District; and

WHEREAS, Perpetua Resources contends that such ASAOC includes removal actions under CERCLA affecting the Stibnite Mining District defined in the ASAOC and that accordingly the Litigation is subject to dismissal under CERCLA Section 113(h); and

WHEREAS, the Tribe disputes the scope and effect of the ASAOC in potentially barring all or most of its Claims under CERCLA Section 113(h); and

WHEREAS, the Tribe and Perpetua Resources entered into court-approved mediation beginning in February 2021, with the assistance of Barbara Cosens, University Distinguished Professor Emerita with the University of Idaho School of Law, acting as Mediator; and

WHEREAS, through the mediation, technical experts and consultants from the Tribe and Perpetua Resources conferred and exchanged information to identify potential projects to reduce pollution sources into the EFSF Salmon River and tributaries, including from sources within the Stibnite Mining District, including the Stibnite Gold Project Site and the Cinnabar Mine Site; and

WHEREAS, the Parties' technical teams also conferred with representatives of the EPA and Forest Service to develop these potential projects; and

WHEREAS, the Parties agree it is premature in this settlement agreement to specify specific projects that might be supported by the Fund created under this Settlement Agreement due to numerous future uncertainties and complexities; and

WHEREAS, the Cinnabar Mine Site, which is not owned by Perpetua Resources, may contribute to pollutant loading within the EFSF Salmon River watershed and, as such, actions at the Cinnabar Mine Site may represent a cost-effective means to reduce significant pollutant loading in the watershed; and

WHEREAS, the Parties understand that estimates of costs made during settlement negotiations for the purpose of identifying potential projects may not reflect actual costs, and that Perpetua Resources' obligation to provide contributions toward any projects is limited to Perpetua Resources' obligations to contribute to the Fund pursuant to the terms of this Settlement Agreement; and

WHEREAS, the Tribe and Perpetua Resources have, in good faith, reached agreement through the mediation on various measures and terms to resolve the Claims, and provide funding for projects to improve water quality in the South Fork Salmon River watershed; and

WHEREAS, the Tribe and Perpetua Resources each desire to resolve the Litigation informally and through settlement at this point in time, and thereby avoid what each Party believes could be protracted and expensive further litigation with uncertain outcome,

NOW, THEREFORE, the Tribe and Perpetua Resources (hereafter, the "Parties") agree to the following terms and conditions of settlement:

## SETTLEMENT TERMS AND CONDITIONS

### I. SETTLEMENT CONTRIBUTIONS

In return for the Tribe's agreement to dismiss the Litigation under the terms and conditions provided herein, Perpetua Resources will make contributions in the total amount of $5 million as described in more detail below.

#### A. South Fork Salmon Water Quality Enhancement Fund -- $4 million

The Tribe will establish a South Fork Salmon Water Quality Enhancement Fund ("Fund") to support projects approved by the Tribe that are intended to improve water quality in the South Fork Salmon River watershed.

Perpetua Resources will contribute a total of $4 million to the Fund through annual payments of $1 million each year for four consecutive years, beginning no later than one year after the Court has approved the Parties' Stipulation of Dismissal and Settlement Agreement. The value of the In-Kind Contribution, as defined below, shall count as a credit towards this $4 million contribution under the terms described below. No interest on any amounts not yet paid will accrue during the pendency of these annual payments.

### B. In-Kind Contribution

Up to $300,000 may be credited against Perpetua Resources' total contribution of $4 million to the Fund through an in-kind contribution ("In-Kind Contribution") by Perpetua Resources by Perpetua Resources collecting data needed to characterize the sources of water quality loading above and within the Yellow Pine Pit, including, but not limited to: movement of constituents in groundwater upstream of the Yellow Pine Pit ("Pit"); hydrology and hydrogeochemistry of the Pit; hydrology and hydrogeochemistry of the Pit wall; and Pit lake sediment composition. Any data gathering work sought by the Tribe shall be consistent with the ASAOC work schedule and consistent with allowing Perpetua Resources to maintain the legal protections provided under the ASAOC. Valuation of the In-Kind Contribution shall be inclusive of any oversight costs assessed by EPA with respect to the In-Kind Contribution work unless the EPA waives such costs. Perpetua Resources and the Tribe agree to seek a waiver or minimization of any federal oversight costs for measures taken as the In-Kind Contribution. Perpetua Resources will provide the Mediator with reasonable documentation of expenditures on these activities, and the Mediator will determine the amount from the expenditures to be credited to the Fund as the In-Kind Contribution.

Without delaying or interrupting the performance of any ASAOC required response actions by Perpetua Resources, data collection shall occur simultaneously with the ASAOC actions scheduled to be taken by Perpetua Resources. The information may be used to guide the Tribe's decisions on projects on the Stibnite Gold Project Site, whether or not the Stibnite Gold Project is permitted, as well as to guide decisions by Perpetua Resources on development of the Stibnite Gold Project if it proceeds.

C.   **Fees and Costs -- $1 million**

Based on documentation of attorney fees and litigation costs the Tribe has provided to the Mediator, Perpetua Resources will reimburse $1 million to the Tribe for attorney fees and costs incurred in the CWA litigation, through two payments of $500,000 each to the *Advocates for the West* Lawyer Trust Account. The first such payment will be made within 6 months and the other payment within 1 year of the Court's approval of the Parties' Stipulation of Dismissal and Settlement Agreement under Section III below.

II.   **USE OF FUND**

The Fund shall be used solely to support water quality improvement projects in the South Fork Salmon River watershed and shall be focused on reducing pollutant loadings from the Stibnite Mining District (including the Stibnite Mine Project Site and the Cinnabar Mine Site (as further described below)), including downstream restoration if warranted, and areas of metal contamination of stream sediments in these vicinities.

Through the mediation, the Parties' technical teams worked together to identify a number of potential projects to reduce pollutant loadings from these areas. The Parties' technical teams also conferred with representatives of the EPA and Forest Service to develop these potential projects under the mediation confidentiality agreement.

However, specific projects that might be supported by the Fund are not identified within this Settlement Agreement due to numerous future uncertainties and complexities, including the need for review of existing and new data to identify and prioritize those projects that are believed by the Parties' technical teams and agreed to by the Tribe to provide the greatest improvement in water quality taking into account optimum use of the Fund and the Tribe's interest in addressing those constituents of concern that pose the greatest risk to human health from fish consumption

in the South Fork Salmon River watershed at the rate of consumption relevant to members of the Nez Perce Tribe.

The Parties understand that estimates of costs made during settlement negotiations for the purpose of identifying potential projects may not reflect actual costs, and that Perpetua Resources' obligation to provide contributions toward any projects is limited to its contributions specified in Section I of this Agreement. However, as noted below, third-party contributions to the Fund are not precluded, including contributions from non-governmental organizations ("NGOs"), and federal, state and/or local agencies interested in supporting projects within the purposes of the Fund.

The actual costs of projects selected by the Tribe under this Agreement may be paid from the Fund.

All contributions to the Fund will be held by the Tribe in an interest-bearing banking account that is separate from other Tribal accounts, and any interest earned in the account will be available solely to support Fund project spending.

The Tribe will determine use of the Fund for specific projects following appropriate consultation or coordination with federal and state entities and the Settlement Joint Technical Team, as provided for below.

In selecting Fund projects, the Tribe will be guided by the recommendations of a Settlement Joint Technical Team to be composed of representatives or experts from the Tribe and Perpetua Resources, taking into account optimum use of the Fund, including addressing those constituents that pose the greatest risk to human health from fish consumption in the South Fork Salmon River at the rate of consumption relevant to members of the Nez Perce Tribe.

**Projects at the Stibnite Gold Project Site:** Prior to a final permitting decision on the Stibnite Gold Project and following that decision if the Project is permitted, Fund projects and activities related to the In-Kind Contribution will be administered by Perpetua Resources, including any required coordination with, or approval of, federal and state entities. The Tribe will not be responsible for administering such projects and will not incur any liability for any such projects. Any projects selected by the Tribe will not be inconsistent with Perpetua Resources meeting its obligations under the ASAOC or with Perpetua Resources maintaining legal liability protections under ASAOC or other federal, state, and local requirements.

In the event the Stibnite Gold Project is not permitted, Fund projects may proceed within the footprint of the Stibnite Gold Project Site using the process and subject to the terms for the Cinnabar Mine Site, as set forth below.

The Parties agree to work in good faith to ensure that any water quality improvement projects in the South Fork Salmon River watershed will not interfere with Project operations.

**Projects at the Cinnabar Mine Site:** Funds may be dispersed by the Tribe for projects that take place within the vicinity of the former mine known as the Cinnabar Mine Site, *see* graphic attached as Exhibit A.

Projects at the Cinnabar Mine Site may include participation by third-party NGOs. Selection, administration and implementation of any Fund project on the Cinnabar Mine Site is subject to execution of any and all documents, agreements, orders, permits, or other legal arrangements required by any agency or private landowner, or deemed necessary by either Party to preclude any legal liability associated with such project.

If, following appropriate consultation or coordination with EPA and/or Forest Service and/or private landowners, in addition to the Settlement Joint Technical Team, the Tribe

SETTLEMENT AGREEMENT --                11

determines projects are not reasonably available or feasible within the Stibnite Gold Project Site or the Cinnabar Mine Site, the Tribe may use the Fund for water quality improvement projects on any federal, state, or private property within the South Fork Salmon River watershed; provided, however, if such property is not owned by one of the Parties, each Party shall receive any and all documents, agreements, orders, or other legal arrangements required by any agency or private landowner, or deemed necessary by either Party, to preclude any actual or potential legal liability associated with such project. Any Fund projects selected by the Tribe for implementation outside the Stibnite Gold Project Site and Cinnabar Mine Site will proceed through the process and subject to the terms set forth for the Cinnabar Mine Site; provided, however, the Tribe may voluntarily choose to implement all or part of a water quality improvement project in lieu of, or in coordination with, other entities.

The Parties agree to work together in good faith post-settlement to seek additional sources of funding to address water quality loading from the Cinnabar Mine Site.

### III.  DISMISSAL OF LITIGATION

Based on the terms of the Settlement Agreement set forth herein, the Tribe agrees to dismiss the Litigation through the following process:

First, the Parties will execute and file with the Court a Stipulation of Dismissal under F.R.Civ.P. 41(a)(2) and Proposed Order, as attached hereto, incorporating the terms of this Settlement Agreement and providing for dismissal of the Claims without prejudice pending full implementation of Section I of this Agreement, with the Court retaining jurisdiction to enforce Section I of the Settlement Agreement until the obligations set forth in Section I are satisfied in full. The intent of the Stipulation of Dismissal is to allow dismissal of the Litigation while accommodating the Parties' obligations under this Agreement, with the understanding that the

Tribe retains the ability to refile the Claims during the period between this Stipulation of Dismissal and the Dismissal with Prejudice (as described below), as the Tribe's sole remedy, if Perpetua Resources breaches its obligations under Section I.

Second, pursuant to 33 U.S.C. § 1365(c)(3), the Tribe will provide a copy of the Stipulation of Dismissal and Settlement Agreement to the Attorney General of the United States and the Administrator of the U.S. Environmental Protection Agency (EPA) and request that the Court allow a 45-day period for review by the agencies, before approving the Stipulation of Dismissal and Settlement Agreement.

Third, following such 45-day period, the Parties will request the Court approve the Stipulation of Dismissal and Settlement Agreement as being proper, fair, reasonable, and in the public interest, and retain jurisdiction pending compliance with Section I of this Settlement Agreement, pursuant to *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 381 (1994). The Parties will provide semi-annual status reports to the Court on implementation of this Agreement.

Fourth, once Perpetua Resources has satisfied its obligations under Section I of this Agreement, the Parties will submit to the Court a Stipulation of Dismissal with Prejudice that confirms compliance with Section I of this Agreement, and that the Claims are dismissed with prejudice.

### IV.     CONFERRING ON OTHER SGP PERMITS

The Settlement Agreement is expressly limited to the Claims and does not affect the Tribe's opposition to the Stibnite Gold Project or limit the Tribe's rights to oppose it, and nothing in the Settlement Agreement limits Perpetua's right to seek all required permits and approvals from the Forest Service and numerous other federal, state, and local agencies related to

undertaking new mining operations and completing the reclamation and restoration of the Stibnite Mine Project Site.

However, the Parties agree to engage in good faith discussions and exchange of information in an effort to resolve concerns the Tribe has with Perpetua Resources' outstanding state permit applications for the Project, listed below. Discussions may include reviewing proposed conditions or modifications to permit applications that will address the concerns. While the Parties agree to enter into these discussions in good faith, this Settlement Agreement imposes no obligation to reach final resolution on any of the permits, and this Settlement Agreement is not dependent on final resolution of concerns on any of the permits. This section is applicable to the following Perpetua Resources' State of Idaho permit applications and other authorizations:

> IDWR Water Rights Applications;
> IDWR Dam Safety Applications;
> IDEQ CWA 401 Certification;
> IDEQ Cyanide Facility Application (including Idaho Department of Lands (IDL) Permanent Closure Plan);
> IDEQ Ground Water Quality Rule Point of Compliance (POC) Application;
> IDEQ IPDES Permit Applications;
> IDEQ Clean Air Act Permit to Construct Application; and
> IDL Reclamation and Closure Plan Submittal.

The Parties agree that Tribal concerns related to federal authorizations and permits related to the Stibnite Gold Project shall be addressed separately from this Settlement Agreement to ensure that any communications between the Parties shall be independent from, and in no way interfere with, the government-to-government consultation process between the Nez Perce Tribe and federal agencies regarding review of the SGP. However, nothing in this Settlement Agreement prohibits the Parties from engaging in good faith discussions and exchange of information regarding the federal Clean Water Act 404 Permit and the Endangered Species Act.

## V.  MEDIA STATEMENTS

The Parties, in coordination with the Mediator, will confer and agree on any media release(s) (including those required by law) regarding the scope, nature and intended effect of the Settlement Agreement, to be released upon submitting the Settlement Agreement and Stipulation of Dismissal to the Court.

## VI.  NO ADMISSION OF LIABILITY OR PRECEDENT

The Parties execute this Settlement Agreement solely for the purpose of compromising and settling this Litigation and nothing herein shall be admitted as a precedent in any proceeding except any proceeding related to the enforcement of this Settlement Agreement.

This Settlement Agreement (including the Recitals) is not, and shall not constitute or be construed as, a finding, adjudication, admission against interest, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation or wrongdoing or liability by any of the Parties with respect to any fact or issue involved in any pending or future administrative proceeding or litigation.

No provision of this Settlement Agreement shall be construed to affect the Tribe's opposition to the Stibnite Gold Project or limit the Tribe's rights to oppose the Project.

No provision of this Settlement Agreement shall be construed to affect Perpetua Resources seeking final approval of the Stibnite Gold Project and defending its interests in the Project.

No provision of this Settlement Agreement shall be construed to interpret, modify, or diminish the Tribe's treaty-reserved rights or other rights under applicable federal, state, or Tribal law.

Notwithstanding any provision of this Settlement Agreement, the Parties reserve their rights to support or oppose the designation of the Cinnabar Mine Site on the National Priorities

List.

## VII. AUTHORITY AND EFFECTIVE DATE

The signatories named below warrant that they are each authorized to agree to and bind the respective Parties to the terms and conditions of this Settlement Agreement. This Settlement Agreement is effective as of the date of filing with the Court.

**IT IS SO AGREED.**

08-08-2023
DATE

Shannon F. Wheeler
Chairman
Nez Perce Tribal Executive Committee

8-08-2023
DATE

Rachel P. Edwards
Secretary
Nez Perce Tribal Executive Committee

August 8, 2023
DATE

Laurel Sayer
President and CEO
Perpetua Resources Corp. and
Perpetua Resources Idaho, Inc.

August 8, 2023
DATE

Christopher M. Dail
President
Idaho Gold Resources Company, LLC

SETTLEMENT AGREEMENT --                    16

EXHIBIT A

EXHIBIT A

